Anthony Williams
Private Attorney General
FDC Miami #05963-122
P.O. Box 019120
Miami, FL 33101

FILED BY _____ D.C.
JAN - 5 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA.—MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTHONY TROY WILLIAMS,
    Petitioner                                    CASE NO.

v.

Warden Carlton, FDC Miami,
    Respondent

PETITION FOR WRIT OF HABEAS CORPUS

Private Attorney General Anthony Williams, a servant of the Most High Yahweh Elohim Yahshua, submits this Writ of Habeas Corpus pursuant to 28 USC 2241 to challenge the undersigneds unlawful incarceration, unlawful conviction and unlawful conditions of confinement. In support of this writ the undersigned state the following facts.

I. UNLAWFUL CONVICTION AND INCARCERATION

The petitioner owned and operated the Common Law Office of America and Mortgage Enterprise Investments (hereinafter "CLOA" and "MEI") since 2002 in eight (8) States including here in Florida. The petitioner was maliciously targeted by the FBI because of the fraud that petitioner exposed regarding the mortgage and banking industry and that the FBI had turned a blind eye and was facilitating the fraud. The petitioner's office computers and office files were unlawfully searched and seized by the FBI in 2015 under the false pretense that the petitioner had committed mortgage fraud, bank fraud, money laundering, mail fraud and wire fraud. After an extensive investigation into the business affairs of the petitioner, the U.S. Attorney's office in Miami DECLINED prosecution stating they couldn't find any evidence

that a federal crime had been committed.

Two years later petitioner was indicted in Honolulu Hawaii for the same offenses petitioner was charged with in Florida using the same confiscated computers and office files. After going through all of the petitioners computers and office files, the mortgage fraud, bank fraud and money laundering charges were dropped but the petitioner was indicted for mail and wire fraud with the SAME information that the U.S. Attorney's office in Miami DECLINED prosecution two years prior.

The petitioner took the case to trial and Judge Leslie Emi Kobayashi struck ALL of the petitioners witnesses (that she previously approved) from the mainland who were scheduled to attend and testify on the petitioners behalf which would have proven the petitioners innocence and that the petitioner's services rendered were exceptional and satisfactory to all of the petitioner's clients. Judge Kobayashi denied petitioner from presenting video evidence which would have proven the petitioner's innocence and denied pertinent documents which would have proven all the documents that the petitioner filed on behalf of clients were already approved by the appropriate governmental agencies for filing which was also video recorded as proof and Judge Kobayashi denied that video evidence from being shown to the jury.

After the closing arguments, the jury requested to have the trial transcripts read back to them and was refused by Judge Kobayashi after she notified petitioner that if the jury requested them, then they would have to have the whole trial transcripts read back to them and not partial. Upon Judge Kobayashi's denial of the trial transcripts to the jury, the jury convicted the petitioner in 3 hours. The trial lasted for 5 weeks and was the reason the jury wanted the transcripts to refresh their memory on the testimony of all the witnesses. None of the witnesses that the government called testified that the petitioner committed mail or wire fraud, yet the petitioner was convicted of this.

The petitioner was a victim of selective prosecution because the prosecutors intentionally did not charge, arrest nor indict any of the petitioner's "white" employees but only charged minorities. The prosecutors (who are "white") blatantly didn't charge any similarly situated subjects who were of the same

race as them. The petitioner brought this to the attention of the court and filed the proper motion for selective prosecution and was unlawfully denied without giving a reason why it is not selective prosecution when "white" subjects are engaged in the same conduct working in the same office and yet have no charges filed against them but against all the minorities in the office. This violates the 5th and 14th Amendments of the U.S. Constitution and is grounds for the overturning of the unlawful conviction and petitioner to be immediately released.

## II  UNLAWFUL CONDITIONS OF CONFINEMENT

The conditions of confinement at FDC Miami are inhumane and constitutes cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

### A. STAFF SUBJECTING INMATES TO CORONA VIRUS

The staff at FDC Miami have a total disregard for the safety of the inmates and have shown a deliberate indifference to the complaints of the inmates regarding our safety. Numerous staff members (especially the nurses), come in the unit without wearing a mask and when petitioner has voiced concerns to the staff members, they ignore it and continue as they were. The recent outbreak in FDC Miami is due to the staff members unwillingness to follow proper protocols and take the COVID-19 pandemic serious. The undersigned received an email from his sister stating that petitioners Aunt has been hospitalized with COVID-19 and is on a ventilator, and doctors have given her 3 days to live. The minority community has the highest risk of contracting the virus and the highest mortality rate. It is quite alarming that the staff at this facility refuse to do something as simple as wearing their mask when they interact with the inmates to prevent the spread of COVID-19.

*Exhibit 2*

The FDC Miami mandates all inmates to quarantine 14 days when they arrive from another destination and test them to ensure that they have not contracted the virus. After quarantine inmates are supposed to be moved to a unit where all inmates have tested

negative. However, the petitioner's current cellmate Rodney Rackley was placed in a cell with an inmate that the staff KNEW had not cleared COVID-19 protocol and was diagnosed with COVID-19 the same day and medical came and moved him. Instead of the staff also re-quarantining Mr. Rackley, they left him in the cell without disinfecting the cell and didn't retest him to see if he has contracted the COVID-19 virus. (See Exhibit 1 - Declaration of Rodney Rackley). Approximately a week later the petitioner was moved into this same cell with Mr. Rackley, that still was never disinfected and Mr. Rackley never retested or requarantined. This sort of neglect has placed the life of the petitioner, Mr. Rackley and other inmates at risk and should not be tolerated. The FDC Miami does not have regular COVID-19 testing for the unit officers who are the only ones that can contract the virus and bring it into the unit on a regular basis because they work the unit 5 days a week. This is baffling and quite perplexing that the FDC Miami has a total disregard for the inmates safety and quite frankly the safety of its entire staff.

The petitioner and his cellmate both could be carriers of the coronavirus but at this point we have no way of knowing because we haven't been tested since we have been exposed to another inmate whose name is Patrick Eldridge. For the FDC Miami staff to have prior knowledge that Mr. Eldridge had tested positive and failed to retest Mr. Rackley and the petitioner is wreckless, dangerous, life threatening and borders on the side of criminal because this virus is unpredictable and has taken the lives of seemingly healthy individuals and it should be taken more serious by the staff at FDC Miami especially with the recently increased number of cases and deaths from COVID-19.

B. SOLITARY CONFINEMENT CONDITIONS FOR GENERAL POPULATION

As outlined above earlier, the FDC Miami subjects all inmates to quarantine before placement in general population. All inmates in general population must pass quarantine to be housed in a general population unit. In quarantine inmates had one hour sometimes one and a half hours a day outside the cell to make calls to family or friends, read and send email, shower and get ice and water. The number of inmates out at one time in quarantine is limited to ensure minimal contact between inmates and to allow for each inmate the opportunity to use the phones, email and showers. Once the inmate clears quarantine and moved to general population, one would expect the conditions to be better. However, this policy at FDC Miami subjects the general population to solitary confinement like conditions. General population only gets two hours a day out of the cell and instead of having a limited amount of inmates out so that everyone can use the phone, email and shower, the FDC Miami allows approximately sixty (60) plus inmates out at one time to use six (6) phones, five (5) computers, shower, get water, etc in a two hour period. The restriction of time to utilize the phones, emails and showers cause for friction and tension which have almost escalated to physical altercations on several occassions.

Since this is the unit that has been cleared and COVID-19 free, there shouldn't be a restriction on the time inmates are allowed out of the cell to utilize the phones, email and showers. This has caused undue stress for inmates because some inmates do not get the opportunity to call or email their loved ones because of the restriction of time with the number of inmates waiting to use the phones and email. General population inmates shouldn't feel as if they are in the Segregated Housing Unit when they haven't violated any rules, policies or procedures.

The FDC Miami as of yet do not provide radios nor mp3's for the inmates to be able to hear the news or understand any TV programs. Most FDC's make these available for purchase from the Commissary but this FDC Miami facility has failed to provide it which decreases the moral in the unit. This should be correct expeditiously before the tension esalates and explodes.

C. INADEQUATE MEDICAL ATTENTION AND RESPONSE

The inmates at FDC Miami, are subjected to inadequate medical services from an inadequate staff. The petitioner has submitted numerous cop-outs through paper forms and email to staff to no avail. The petitioner has notified the staff that he has been in the BOP system for 3 years and has been on the waiting list for dental cleaning for 2 1/2 years and still hasn't been able to get his teeth cleaned. The petitioner's gums constantly bleeds when he brushes which is indicative of gingivitis and if not treated can digress into something more serious. The petitioner has also brought it to the attention of the medical staff of a growth on the left side of the petitioner's head that petitioner had a biopsy previously by an outside doctor while housed at FDC Honolulu but was transferred to Miami before the petitioner received the results. The growth still causes the petitioner pain and petitioner has yet been able to see a doctor to get this issued examined and alleviated. It has been a month and the petitioner has yet to receive a response from medical from the paper cop out and dental from the email to staff cop out (see Exhibit 3). Other inmates have experienced the same inadequacies and delay in medical attention or no response at all. This is truly disturbing and quite alarming especially during this COVID-19 pandemic that the lack of prompt medical attention could eventually cost some inmates their lives. There should be a better system in place that would address inmates medical issues in a timely manner and provide adequate solutions and relief. As of today petitioner can not put in another paper cop out because according to the unit C.O. Sylvestre, they are out of cop outs and since the petitioner has already been out for our two hours, use of the email can not be utilized until the evening of Christmas day when petitioners tier comes out at around 6 p.m. This is unacceptable and need to be corrected expeditiously.

D. IMPROPER PREPARATION AND SERVICE OF FOOD

The FDC Miami's modus operandi of preparing and serving inmate food is inadequate, improper and inhumane. The food at FDC Miami for the most part is devoid of any seasoning and the FDC Miami does not provide the proper condiments for inmates to properly and adequately season their food to their liking before masticating and digesting it. Every day for breakfast the FDC Miami serves the same stale cereal, some type of muffin, peaches or apple and milk. This is not the standard national menu, neither does any other facility serve the exact same meal for breakfast everyday.

The preparation and service of the food is no better. The food is cooked and then the trays are prepared and brought to the unit hours before it will be served. The food sits in the trays until its cold and then the staff serves the cold trays to the inmate. The petitioner has made numerous complaints about this to no avail. To add insult to injury the FDC Miami does not have any microwaves whereby inmates can heat up their food when it is served cold. The national menu provides for some sort of meat with each meal. However, at FDC Miami, most trays come without meat, instead you will have a plethora of potatos, carrots, spinach or some sort of other inadequate replacement. Very seldom does the FDC Miami provide proper juice with each meal, instead sometimes, not very often they issue to inmates one (1) Kosher pack of lemon, grape or orange which is not enough in quantity for you to taste the juice. When you put the juice in the water and mix it, it still tastes just like water. Most facilities of the BOP have juice made and inmates bring their cups and fill it up with the juice provided. It seems the FDC Miami has concocted a way to circumvent from providing real juice by offering these Kosher packets which does not provide any sort of flavor to remotely resemble anything close to juice.

### E. LACK OF LAW LIBRARY

The FDC Miami is under the misnomer that during a pandemic inmates have no rights and are not entitled to an adequate law library and proper access to the courts. The petitioner is a pro se defendant and has filed numerous copouts to have access to the law library to no avail. The petitioner previously had a court order issued by Judge Barry Kurren which mandated that petitioner have access to the law library 7 days a week for a MINIMUM of 2 hours per day. Currently no inmates are allowed to go to the law library and the FDC Miami's excuse is due to COVID-19. The use of the law library would not jeopardize the health and safety of the staff neither would it disrupt the orderly running and operation of the facility. The outright denial of the use of the law library is a direct violation of the Constitution and what the U.S. Supreme Court ruled in Bounds v. Smith, and Johnson v. Avery. The FDC Miami has disregarded the fact that the courts are still open, cases are still being heard in this pandemic, yet they are depriving the petitioner the right to do adequate research to properly defend his case and collaterally attack petitioners unlawful conviction and incarceration. The petitioner nor any other inmate can view their discovery discs because we are denied access to the law library. The petitioner has sent a request to staff to have access to the library and has yet to receive a response. The only remedy the petitioner feels, is what petitioner had to do in Hawaii and have the court intervene. (See Exhibit 4)

### F. DENIAL OF VISITATION

The petitioner's son flew in from Atlanta to visit the petitioner and was denied by a rude, unprofessional officer named Jones who would not give petitioner's son her first name. Petitioners son did everything that was required and still denied entrance. The petitioner and his son incurred unnecessary expenses because of this unlawful denial of visitation. Petitioner hasn't seen his son in 4 years and the denial of visitation was extremely stressful because petitioner's youngest son was killed this year on his birthday so the denial of petitioner's other son's visitation added to the mental anguish and emotional distress petitioner was already experiencing. (See Exhibit 5)

G. LIMITED ACCESS TO COUNSELOR AND CASE MANAGER

Upon arrival at FDC Miami, all inmates are issued the Inmate Admission and Orientation Handbook which outlines the policy and procedures that inmates and staff are expected to follow. On page 5 of the inmate handbook it states the following duties and responsibilities for the Case Manager and Correctional Counselor:

Case Manager - The case manager is responsible for all casework services and prepares Classification material, progress reports, release plans, correspondence, and other materials relating to the inmate's commitment. The case manager serves as a liason between the inmate, the administration, and the community.

Correctional Counselor - The counselor is primarily responsible for day to day activities. The Counselor provides counseling and guidance for the inmates of the unit in areas of institutional adjustment, personal difficulties, and plans for the future. He/she will assist with visitation, phone, electronic mail, and administrative remedies. The Counselor may conduct counseling groups for inmates in his/her unit and/or groups open to the general population.

The petitioner and all inmates access to the Case Manager and Counselor is limited because of 1) the unnecessary lockdown of 22 hours per day; 2) because of the lockdown inmates don't have access to go to Counselors office and 3) the Counselor is never in his office in the unit and the Case Managers office is not in the unit and therefore inmates have no access to the Case Manager except via paper copouts or emails which most often does not get answered with the exception of Ms. Melek who does answer emails.
The BOP is paying the Counselor to assist the inmates but the Counselor is never in his office and never answers emails that are sent to him. The petitioner has seen the Counselor in the unit one time in a month and only stayed approximately 15-20 minutes. If the counselor doesn't want to come to work and do his job then the BOP should get rid of the position and save the tax

payers money that can be utilized in other areas that would be beneficial. This is the only facility that the petitioner has been housed in that inmates don't have daily access to the counselor and case manager to address their issues. The petitioner's aunt has passed away due to COVID-19 and petitioner can't speak with the counselor personally to speak with his family and to try to make arrangements so that the petitioner can attend the funeral via video conference. The petitioner and inmates housed in FDC Miami are being deprived of the necessary access to the counselors and case managers to handle the issues outlined in the inmate handbook regarding the responsibilities and duties of both positions.

## H. VERIFICATION

Petitioner has signatures of multiple inmates housed at the FDC Miami who have verified that the things contained in this writ are accurate and true regarding the conditions that petitioner and all inmates housed in FDC Miami are subjected to on a daily basis. Petitioner has no other remedy or recourse but to petition the court to obtain relief from these unlawful and unconstitutional conditions in FDC Miami.

# VERIFICATION

WE THE INMATES AT FDC MIAMI VERIFY THAT THE THINGS CONTAINED IN THIS WRIT REGARDING THE CONDITIONS OF FDC MIAMI ARE EQUITABLE AND TRUE

INFO: NAME                Signature            REG.#

1. Rodney Rackley                              71969-097
2. Matt. Marcos                                82056-004
3. Ray Batista                                 09248-104
4. Curtis Gilmore                              20812-104
5. Steven Cenephat                             20941-104
6. Kelvin Day                                  20943-104
7. Yosef S. Calderon                           57505-018
8. Angel Carmona                               21509-067
9. Ken Glunton                                 19692-104
10. Samuel Stokes                              20754-104
11. Lamar Thornton                             26509-104
12. Christopher Lima                           20840-104
13. Yoisel Espinosa                            18477-104
14. Jeffrey Edward                             26015-104
15. Philip Sanders                             17475-028
16. Rony Jirardin                              6753401?
17. Marcus Ceasar                              15556-104
18. Tajnajeeullah                              21094-104

*Note* #3 Ray Batista has an open case No. 1:20-cv-25108-AHS under Batista v. FDC Miami.

RELIEF SOUGHT

The petitioner is seeking the following relief for petitioner and inmates.

1. All day access to the law library
2. Hot food, different meal for breakfast, real juice and meat with trays
3. Out of cell from 1 A.M to 9:45 P.M. Monday through Sunday
4. Teeth cleaned and medical attention to the growth on petitioner's head
5. Staff to follow safety protocols for COVID-19 and wear masks and PPE equipment when interacting with inmates
6. 15 minute calls to family with only 10 minute wait period between calls
7. Petitioner's conviction vacated and petitioner released from custody
8. Visitation with family and friends for a minimum of 2 hours
9. Counselors and Case Managers to stay in their offices in the unit so that inmates can address any issues they need rectified
10. The Warden to come to the units every day so that inmates can address their concerns to him directly and removal of the limit of email request to staff
11. Provide inmates with the proper forms to address grievances
12. Provide inmates with someone trained in the law to assist them with their case
13. Reimburse petitioner's son for expenses for flying to Miami and being denied visitation.
14. Compensate petitioner $10,000 dollars for violation of his rights.

CONCLUSION

Based upon the foregoing facts the petitioner moves this court to grant all the relief sought in this writ.

Executed this 30th day of December 2020.

Righteously Submitted,

Anthony Williams
Anthony Williams
Private Attorney General
Counsel to the Poor (Psalms 14:6)
Common Law Counsel (28 USC 1654, First Judiciary Act of 1789, sec. 35)

# DECLARATION OF RODNEY RACKLEY

I, Rodney Rackley, declare, depose and state that the following is true, correct and complete to the best of my knowledge, information and belief under the penalty of perjury.

I was on the Quarantine floor for 32 days after being told it would take only 14-21 days. Finally, after being relocated to the 7th floor East Wing, Officer Sylvestre directed me to cell 11. Inmate Patrick Eldrick was in the cell alone and before being placed in his cell he informed me and the officer that he was not cleared of the Corona Virus. The officer did not take this seriously after being told this many times to protect my safety. He waved our complaints off and locked me in the cell anyway. 30 minutes later inmate Eldrick had a call out to go see the phyche lady where he voiced what was going on. He later came back from the call out and informed me that the phyche lady was going to look into it because that wasn't right. About 30 mins to an hour after talking to the phyche lady, the Medical team came. If im not mistaken a Mr. McCloud came into the room upset, and asked inmate Eldrick why he was making complaints. He didn't feel like moving him because he had 1 more day on a general population floor to be cleared from the Corona Virus. He removed inmate Eldrick out the unit, left me in the room without sanitizing anything. Mr. McCloud even told him to leave his clothes and linens in the room and on the bed. They never came back to test me, move me or clean the room. The staff here has a blatant disregard about our safety. Officer Sylvestre then came to say he thought it was a joke and then made a joke about me catching it knowing that the complaints were now valid and true.

Exhibit 1

I feel that my life and safety was unneccesarily jeopardized by the FDC Miami Staff, who did not follow proper policy and safety procedures regarding the handling of inmates due to the corona virus Pandemic.

_____  
Declarant

Dec 29, 2020  
Date



USMS INSPECTED
BY

UNITED STATES DISTRICT COURT
Office of the clerk, Room 8N09
400 North Miami Ave
Miami, FL 33128

Anthony Williams
FDC Miami #05963-122
P.O. Box 019120
Miami, FL 33101
Return Receipt Requested

LEGAL MAIL

mailed on 12-30-20